OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
By verified petition dated December 7, 1981, the New York City Commissioner of Social Services seeks an order finding that 16-year-old Alyne E. is an abused child within the meaning of article 10 of the Family Court Act. The respondents are the natural parents of the child and the specific allegations against them are set forth in a rider attached to the official form court petition.
The respondent mother was represented by privately retained counsel while the respondent father insisted on representing himself. The court made an exhaustive effort to impress upon the respondent father the importance of having counsel. He was told, in very careful terms, the nature of the proceeding, its potential consequences, his right to assigned counsel if he were indigent, and the disadvantage in which he might be placed by refusing the assistance of an attorney. (Matter of Ella B., 30 NY2d 352.) Nevertheless, he resisted all efforts made by the court to afford him the opportunity for counsel.
*308 After carefully evaluating the testimony adduced at the fact-finding hearing, with due regard to the demeanor of the respective witnesses, the court finds that the following facts have been established by a fair preponderance of the credible evidence. (Family Ct Act, § 1046, subd [b].)
The child Alyne is a drug abuser who, on at least two occasions, has had to be treated for having taken an overdose. Moreover, on each such occasion there was a suggestion that the overdose was a deliberate attempt at suicide. In addition, Alyne experienced repeated disciplinary difficulties at the schools she attended. On one occasion, she inflicted a number of scratches on her arm with a razor blade. The conclusion is inescapable that Alyne is a seriously disturbed child, in desperate need of professional help. It is her parents’ reaction to her difficulties that forms the basis of the charges against them.
The respondent father is a New York City fireman. A tall, imposing man, he described himself as a “John Wayne type”, explaining that he was “one hundred percent American”. Both in and out of court, he labeled the State’s interference with his behavior toward his daughter as a “commie plot”.
When confronted with the reality of Alyne’s drug involvement, he reacted with violence against her. Thus, on at least two occasions he grabbed her about the throat, choking the child. When asked about this by a caseworker for Special Services for Children, he objected to the word “choke”. “It’s called strangulation”, he replied. On another occasion, the respondent father put a knife to the child’s throat because she had taken drugs.
As he testified, he frequently clenched his teeth as he discussed his daughter’s drug abuse, sounding as if such drug involvement was more of an affront to him than a threat to Alyne’s health. He righteously proclaimed that Alyne was his daughter and he would do whatever he pleased to her. Thus, he claimed that if she used drugs, he would “smack the hell out of her” and be “violent and abusive to her”. He seemed satisfied with his statement, that he would stop short of putting her in the hosptial.
The respondent father’s disregard of his daughter’s physical integrity is surpassed only by his shocking insensitiv *309 ity to her emotional needs. Thus, following what may well have been a suicide attempt by Alyne, he refused an urgent hospital recommendation that the child be given immediate psychiatric help. This was not the only time that he rejected a plea that Alyne be afforded professional help. His rationale was always the same. Alyne was his daughter, and he would do as he pleased with her.
Even now, after a second near tragedy, the respondent father still refuses to agree that the child needs professional help. He did indicate that he would not rule out family counseling with the understanding that the focus would be on the child understanding her parents, rather than vice versa.
The substance of the allegation against the respondent mother is that she was either “unable or unwilling” to protect the child from the father. The mother is an alcoholic who is currently co-operating with a treatment program.
The record reflects an appreciation on her part that Alyne’s special needs cannot be met by her husband’s parental bluster. She admitted that her daughter had serious problems requiring professional help. And, at one point, she brought the child for counseling at a mental health facility on Staten Island, a fact she had to keep secret from her husband.
Yet her efforts to help Alyne were continually impaired because of the macho madness to which both she and the child were routinely subjected by the respondent father. One of the rules of the home as decreed by the respondent father was that only he was allowed to curse. During her testimony the respondent mother appeared to duplicate what has been standard fare in her home for the last few years. Thus, she tried to walk a tightrope, making a careful effort not to antagonize her husband while, at the same time, demonstrating an awareness of and sensitivity to Alyne’s problems.
Section 1012 (subd [e], par [ii]) of the Family Court Act provides that an “abused child” is one who is less than 18 years of age whose parent “creates or allows to be created a substantial risk of physical injury to such child by other *310 than accidental means which would be likely to cause death or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ”. The court finds that on two occasions, the respondent father choked the child Alyne during the course of a violent outburst against her. On another occasion, during a similar outburst, he placed the blade of a knife against her throat. Given the fury which he admittedly experienced when he so acted, these physical assaults against the child placed her in an extremely precarious position, one creating a substantial risk of the type of physical injury contemplated by section 1012 (subd [e], par [ii]) of the Family Court Act.
The very substantial risk of serious physical injury to which this child has been subjected is evident from the unequivocal statements of the father on the witness stand that he would be “violent and abusive” to Alyne if there were further drug involvement. His assurance that he would stop short of putting her in a hospital is of absolutely no comfort to this court.
In addition, the court finds that the father’s deliberate withholding of psychiatric and psychological evaluation and assistance to this troubled girl, constituted child abuse within the meaning of section 1012 (subd [e], par [ii]) of the Family Court Act. No particular expertise was necessary to establish that Alyne desperately needed professional help. It was patently clear to the respondent mother. It would have been just as clear to the father if he had put aside his peculiar ideas of parental prerogatives long enough to consider, for just a moment, the plight of his suffering daughter.
There is no question that a parent’s right to raise his or her child is fundamental. (Matter of Bennett v Jeffreys, 40 NY2d 543.) Nevertheless, the State “may intervene to ensure that a child’s health or welfare is not being seriously jeopardized by a parent’s fault or omission”. (Matter of Hofbauer, 47 NY2d 648, 655.) Far from being a “commie plot” as alleged by the respondent father, such intervention is a valid and necessary function of the State in deference to the fundamental rights of children as both *311 citizens and human beings. (Prince v Massachusetts, 321 US 158; Wisconsin v Yoder, 406 US 205.) Proceedings under article 10 of the Family Court Act are designed to provide due process of law when the State seeks to intervene in the parental-child relationship against the wishes of the parents. (Family Ct Act, § 1011.)
Concededly, the cases involving an alleged failure to supply medical assistance to a child usually are couched in terms of neglect. (Family Ct Act, § 1012, subd [f], par [i], cl [A]; Matter of Hofbauer, supra; Matter of Sampson, 37 AD2d 668, affd 29 NY2d 900; Matter of Iris C., 46 AD2d 910.) In fact, in Matter of Ray (95 Misc 2d 1046) the Family Court made a finding of neglect where the child’s emotional health was impaired by reason of a parental unwillingness to provide psychotherapy for her.
In this case, however, the failure to provide Alyne with a psychiatric or psychological evaluation and treatment posed a far more serious threat to her well-being than that contemplated by the neglect statute. Where a child has apparently made an attempt at suicide and an urgent plea for psychiatric assistance is ignored by the parent, there is thereby created a substantial risk of subsequent serious physical injury and even death within the meaning of section 1012 (subd [e], par [ii]) of the Family Court Act.
By his adamant refusal to allow psychiatric or psychological assistance to his child, the respondent father has allowed the creation of a substantial risk of serious physical injury or even death of his daughter as contemplated by the definition of “abused child” in section 1012 (subd [e], par [ii]) of the Family Court Act.
Sympathy for the respondent mother flows easily from the facts adduced in the record. She was faced with a child she knew to be seriously disturbed and a husband who made it extremely difficult for her to render meaningful assistance. Yet, being a parent mandates an ongoing vigilance and a firm commitment to protect one’s child from cognizable harm. The facts in this case presented the respondent mother with a major test of her parental abilities and, perhaps, her priorities. It seems clear that Alyne’s health, safety, and well-being demanded a firm stand *312 against the respondent father. Surely, the mother knew that her daughter’s welfare was not being served by her husband’s tirades. She certainly was aware of the violent outbursts to which this already troubled child was subjected by the respondent father. She had to have recognized that a bad situation was getting worse.
In the light of these hard realities, she failed to take the definitive, unequivocal stand necessary to protect Alyne. And, by that failure to act, she allowed the creation of a substantial risk of serious physical injury to the child within the meaning of section 1012 (subd [e], par [ii]) of the Family Court Act. While her passive sufferance is a sharp contrast to the overt actions of the respondent father, it nevertheless constitutes abuse as defined by the statute. Failure to call it such would be distinct disservice to the child’s right to have her status adjudicated.
Accordingly, it is ordered that the child Alyne E. be and she hereby is adjudged to abused by both respondents, and it is further ordered that the child remain on remand to the Commissioner of Social Services pending a dispositional hearing which is hereby set down for March 25, 1982, and it is further ordered that copies of this decision be furnished to the attorneys, parties and the probation department.