OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Today, this court finds that 14-year-old Shane T. is an abused child in that he has been repeatedly called a “fag”, “faggot”, and “queer” by his natural father, a respondent herein. His father also taunted him continually by saying that hé should have been a girl. In holding that Shane is an abused child, the court concludes that the phrase “physical injury” as contemplated by section 1012 (subd [e], par [i]) of the Family Court Act need not be inflicted by physical force and that it encompasses the stomach pain experienced by Shane when his father challenged the boy’s sexual identity.
The instant proceeding arose from petitions filed by the Commissioner of Social Services on February 8, 1982 against the natural parents seeking an adjudication that *162 Shane and his two sisters are abused children.[2] After carefully considering all of the testimony adduced and evaluating the demeanor of the respective witnesses, the court finds that the following facts have been established beyond a reasonable doubt.[3]
Shane is the natural child of the respondents and presently resides with his mother and two sisters. His father is a construction worker who has been separated from his wife for some time, although they continue to see each other.
Over the course of the last several years, Shane has been subjected to an unrelenting torrent of verbal abuse by his father directed at his sexual identity. Specifically, he has been regularly called a “fag”, “faggot”, and “queer”. In desperation, the boy pleaded with his mother to intervene on his behalf and prevail upon his father to cease making these accusations. However, the mother’s efforts were abortive, resulting only in a repetition of the taunts by the father with the added assertion that they were true.
Nor were these accusations limited to the home. On one particular occasion, the respondent father humiliated the boy by calling him a “fag” while they were shopping in a store.
Section 1012 (subd [e], par [i]) of the Family Court Act defines an “abused child” as one “[L]ess than eighteen years of age whose parent or other person legally responsible for his care * * * inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ”. The wording of this section is similar to that contained in subdivision 10 of section 10.00 of the Penal Law, from which it was derived. (Besharov, Supplementary Practice *163 Commentaries, McKinney’s Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 1012, 1981-1982 Supp Pamph, p 412.)
As defined in the Penal Law, “ ‘[pjhysical injury’ means impairment of physical condition or substantial pain” (Penal Law, § 10.00, subd 9; emphasis supplied).
Whether “substantial pain” has been established is ordinarily a question for the trier of fact. In reaching a determination, the subjective reaction of the injured party is a proper factor to be considered although there is an objective level below which the question is one of law. (Matter of Philip A., 49 NY2d 198.) Thus, such things as “petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives”, are not within the contemplation of assault as defined in the Penal Law. (Temporary State Commission on Revision of the Penal Law and Criminal Code, Proposed Penal Law, p 330.)
In deciding whether Shane has experienced “substantial pain”, the court initially considers the observation of Chief Judge Cooke: “Pain is, by definition, a subjective concept and cannot be quantified or expressed with precision. Knowledge of the circumstances and the description of the sensation accompanying the use of force, however, provide a ready basis for measuring, within one’s own experience, the degree of pain felt by another.” (Matter of Philip A., supra, p 202 [Cooke, Ch. J., dissenting opn].) It must be immediately observed that there is no specific requirement of the use of force in the definition of an abused child. (Family Ct Act, § 1012, subd [e], par [i].) Thus, Chief Judge Cooke’s statement relating to “the use of force” is specifically referenced to the assault statute that was under consideration in Matter of Philip A. (supra). In fact, while section 1012 (subd [e], par [i]) of the Family Court Act is derived from subdivision 10 of section 10.00 of the Penal Law, there are substantial differences between the statutes. Thus, it is sufficient for a finding of abuse that there be protracted impairment of emotional health or a substantial risk thereof. It is clear, therefore, that it is the actual or potential impact on the child, as opposed to the per se seriousness of the injury, that forms the predicate for abuse. In this regard, the Family Court Act provision *164 differs markedly from the Penal Law definition of “serious physical injury”. Furthermore, while section 1012 (subd [e], par [i]) of the Family Court Act makes specific reference to “emotional health”, subdivision 10 of section 10.00 of the Penal Law refers merely to “health”.
The foregoing is consistent with the fact that article 10 of the Family Court Act is a civil proceeding “designed to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being.” (Family Ct Act, § 1011; emphasis supplied.) Therefore, this court concludes that the “physical injury” referred to in section 1012 (subd [e], par [i]) of the Family Court Act need not be inflicted by physical force. Rather, to constitute abuse, mere words are sufficient provided that their effect on the child falls within the language of the statute. To hold otherwise would constitute an unjustifiably narrow interpretation of the statute that would frustrate the Legislature’s intent. (Matter of Todd H., 49 NY2d 1022; Wein v Comptroller of State of New York, 46 NY2d 394.)
As he testified, Shane repeatedly tried to forestall tears, but they beseiged his eyes, nonetheless. He told the court how he would cry and his stomach would twist when his father called him a “fag”. At one point, he was asked whether he was beginning to believe that he was a homosexual. He clenched his hands, sat forward, and cried out “No!” His demeanor strongly suggested, however, that he would like someone, anyone to reassure him.
It should be noted that, in addition to the verbal indignities to which he was subjected, Shane was frequently forced to remove his father’s shoes and massage his feet.[4] The boy complied without protest since he was constantly in fear of his father. This fear was well founded since the father has a history of assaultive behavior in the home.[5] *165 Against this background, it is hardly surprising that Shane is now in therapy. This sensitive, handsome little boy has been trapped in an emotional roller coaster that seemingly plunges only downward, at a terrifying speed, toward an end that seems never to come.
To fail to acknowledge this boy’s plight would be an affront to the clear legislative intent of article 10 of the Family Court Act; to fail to label the father’s actions as child abuse would strip the phrase of all meaning; to fail to warn other parents against this insidious type of abuse would perpetuate the suffering of countless other defenseless children.
The respondent father seeks to justify his verbal abuse of Shane as a form of legitimate parental discipline designed to cure the child of certain unspecified “girlie” behavior. He stated that it would be embarrassing to him if Shane were “queer”. It is very sad and even shocking that, at this late date in our constitutional development, many parents continue to view their home as a kingdom where they reign as king and queen and their children are relegated to the role of indentured servants.
While a parent’s right to raise his or her child remains fundamental (Matter of Bennett v Jeffreys, 40 NY2d 543), it is equally fundamental that children have constitutional rights which must be respected by all, including their parents. Matter of Gault (387 US 1) and its progeny leave no doubt that the bill of rights is not for adults alone. Time and again, courts have reiterated the validity of State interference in the parental-child relationship when necessary to protect the child’s health and welfare. (Matter of Hofbauer, 47 NY2d 648; Prince v Massachusetts, 321 US 158; Wisconsin v Yoder, 406 US 205.) Cases such as these and the principles that underline them form the constitutional predicate for child protective statutes such as article 10 of the Family Court Act. Accordingly, the father’s defense is not only legally insufficient but, rather, it is singularly ludicrous.
The behavior of this respondent father is as serious a form of abuse as if he had plunged a knife into the stomach *166 of this child. In fact, it’s probably worse since the agony and heartache suffered by Shane has already assailed him for several years and constitutes a grave and imminent threat to his future psychological development.
The respondent mother testified that she tried to keep peace in the marital home. And the court does find that she attempted to dissuade her husband from continuing his verbal abuse of Shane. Despite this, the fact remains that she failed to protect her son from an ongoing, serious abuse.
She hardly discharged her parental duty to Shane by, in effect, keeping peace at his expense. When her husband persisted in his abuse of the child, she had an obligation to act meaningfully to protect the boy. And, in this regard, no action is meaningful unless and until it results in a cessation of the abuse and protection of the child. To uphold any lesser standard would seriously undercut legislative efforts to halt the senseless abuse and neglect of children.
It is also significant that the respondent mother continues to speak of a reconciliation with her husband despite the absence of any indication that he recognizes the seriousness of his actions toward Shane or the need to involve himself in therapy.
Accordingly, the court finds that the respondent mother allowed physical injury to be inflicted upon Shane which created a substantial risk of protracted impairment of his emotional health. (Family Ct Act, § 1012, subd [e], par [i]; Matter of Trina Marie H., 48 NY2d 742; Matter of Maureen G., 103 Misc 2d 109.)
Therefore, on the entire record it is ordered that Shane T. be, and he hereby is, declared to be an abused child by both respondents, and it is further ordered that he be, and he so is, remanded to the Commissioner of Social Services, and it is further ordered that the Family Court clinic be, and it hereby is, directed to perform an immediate psychiatric and psychological evaluation of Shane on an emergency basis, and it is further ordered that the Probation Department be, and it hereby is, directed to conduct an investigation and prepare a report in aid of disposition, and it is further ordered that the adjourned date of August 18, *167 1982 be, and the same hereby is, vacated and the matter is adjourned to September 15, 1982 for a dispositional hearing, and it is further ordered, that the clerk be and he hereby is directed to supply two copies of the decision to the Department of Probation.

. By short form order, issued simultaneously herewith, the court finds that Shane’s sisters are neglected children as defined in section 1012 (subd [f], par [i], cl [B]) of the Family Court Act.

. The court is aware, of course, that a mere preponderance of the credible evidence would suffice under the statute (Family Ct Act, § 1046, subd [b]).

. In holding that Shane’s sisters are neglected children, the court made a finding that the respondent father frequently forced them to massage his scalp.

. The testimony revealed that on Easter of 1981, the respondent father beat the respondent mother so severely that she had to flee to the roof of their home to escape him. On this occasion, Shane hid under his bed to avoid his father. Similarly, on Thanksgiving of 1981, the boy hid in a tree for two hours when his father visited the *165 home. In addition, the respondent father constantly threatened to break his children’s legs.