OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
Where a child is sexually abused by her stepfather in her home, the natural mother, who had no knowledge of the abuse, will be held to have allowed the abuse if the objective evidence available to her should have prompted adequate protective measures from a responsible parent similarly situated.
This is a proceeding initiated by the Commissioner of Social Services whereby he seeks an adjudication that 13-year-old Katherine C. is an abused child as defined in subdivision (e) of section 1012 of the Family Court Act. In three separate petitions, it is alleged that the child’s siblings are abused and/or neglected as a result of the abuse of Katherine. (Family Ct Act, § 1046, subd [a], par [i].)
*277 After carefully evaluating the testimony of the respective witnesses, including their demeanor, the court finds the following facts to have been established by the credible evidence. When Katherine was 10 years of age, her stepfather forced her to engage in sexual intercourse with him. Utilizing threats and beatings to maintain the child’s fear, he continued to have sexual intercourse with her. Today she is. pregnant with his child.
On the basis of the foregoing, it is obvious that the stepfather abused the child by committing “a sex offense against such child, as defined in the penal law”. (Family Ct Act, § 1012, subd [e], par [iii].) The remaining issue is more difficult and involves the fundamental obligations and priorities inherent in a parent-child relationship.
The natural mother is a. corespondent in this proceeding. It is alleged that she “knew, or should have known that the above-described sexual abuse was occurring, and as a result has allowed said abuse to continue.” The statutory provision in issue provides that a child is abused where a parent “allows to be committed, a sex offense against such child, as defined in the penal law” (Family Ct Act, § 1012, subd [e], par [iii]).
In the instant case, the court finds no credible evidence that the natural mother knew of the sexual abuse of Katherine by her husband. The issue is, therefore, whether a finding of abuse may be made against her on the ground that she should have known about or anticipated the abuse. The resolution of the issue depends upon the standard of behavior and scope of responsibility to which a parent may properly be held accountable where a child is sexually abused in the home.
The legislative purpose underlying article 10 of the Family Court Act is “to help protect children from injury or mistreatment and to help safeguard their physical, mental and emotional well-being.” (Family Ct Act, § 1011.) (Matter of Fred S., 66 Misc 2d 683; Matter of Shane T., 115 Misc 2d 161; Matter of Doe Children, 93 Misc 2d 479.) To this end, it is a civil proceeding wherein a child may be adjudicated to be abused or neglected by a fair preponderance of the credible evidence. (Family Ct Act, § 1046, subd [b]; *278 Matter of Linda C., 86 AD2d 356.) The question of punishing offending parents is reserved to. a criminal forum wherein all the due process protections applicable therein are available to them. (Matter of Fred S., supra; see, e.g., Penal Law, §§ 260.10, 130.35.)[2]
To implement the stated purpose of article 10 proceedings, the court finds that parental behavior must be evaluated objectively. Thus, the test is whether a reasonable and prudent parent would have so acted (or failed to act) under circumstances then and there existing. Good faith, good intentions, and even best efforts, are not, per se, defenses to a child protective petition. To hold otherwise would immediately frustrate legislative efforts to prevent avoidable injury to children.
In Matter of Millar (40 AD2d 637) a finding of neglect was affirmed on the basis of the mother’s mental illness. Her concern for the child and her attempts to provide for her, stressed in the dissenting opinion, were insufficient as defenses. (See, also, Matter of Trina Marie H., 48 NY2d 742; Matter of Maureen G., 103 Misc 2d 109.)
In Matter of Alyne E. (113 Misc 2d 307) this court conceded that it sympathized with the respondent mother in her efforts to shield her daughter from an abusive father. And yet, the court’s sympathy did not prevail over the simple reality that the mother’s efforts were insufficient and inadequate to protect the child.
In Matter of Shane T. (115 Misc 2d 161, supra) this court, while acknowledging the efforts of the respondent mother to protect her son, nevertheless made a finding of abuse against her: “And the court does find that she attempted to dissuade her husband from continuing his verbal abuse of Shane. Despite this, the fact remains that she failed to protect her son from an ongoing, serious abuse.” (115 Misc 2d, at p 166.)
In his Practice Commentary to section 1012 of the Family Court Act Douglas Besharov makes the following assertion: “The phrases ‘allows to be inflicted,’ ‘allows to be created,’ and ‘allows to be committed’ cover situations where the parent or other person legally responsible for the *279 child’s care is not the perpetrator but is present or knows about the abuse and does nothing to prevent or stop it — either because of fear, negligence, incompetence, or lack of concern.” (McKinney’s Cons Laws of NY, Book 29A, p 234.)
Today, this court holds that the import of these phrases must be extended beyond the suggestion of the commentator and be read to include a parent who should have known about the abuse and did nothing to prevent or stop it.
In some instances, the applicability of this principle is fairly obvious. Thus, in an unreported case in Richmond County, a natural mother admitted to having neglected her son where she saw the youngster in bed with an unrelated adult male, who had supposedly befriended him, and yet failed to perceive or appreciate that the boy. was being sexually abused by him.[3]
In the case before the court, each instance of abuse took place at a time when the natural mother was out of the house. At no time did Katherine ever inform her mother of the abuse. Nevertheless, for the reasons that follow, this court makes a finding of abuse against the natural mother on the ground that she should have known that Katherine was at risk and failed to act to protect her.
Earlier this year, Katherine witnessed the sexual abuse of her young girlfriend by the respondent stepfather. Katherine informed the respondent mother a few days later of what she had seen. The respondent mother stated that she didn’t believe Katherine and failed to act. Significantly, however, she ordered Katherine’s girlfriend not to come to the house anymore. In addition, whenever the natural mother left the house, she directed Katherine’s older brother to remain at home, thus evidencing a perceived risk.
The respondent mother admitted that her husband was a violent man; that fear pervaded the household; that he had threatened, on more than one occasion, to kill the entire family; and that he had held a knife to her throat. In addition, when it became obvious that charges of sexual abuse were about to be filed against her husband, the respondent mother immediately hid the knives and razors in the home.
*280 Considered collectively, two conclusions must be drawn from the foregoing. Initially, it is clear that the respondent mother knew that her husband was a dangerous, violent man who had preyed upon a young child. Secondly, it is equally clear that a responsible parent would have marshaled that perception into concrete, definitive action to protect her children. On this record, the only meaningful, and, hence, legally significant action on her part would have been the exclusion of her husband from the home. This could have been pursued by a proceeding under article 8 of the Family Court Act. In addition, the respondent mother could have sought the assistance of the child protective service to shield her children from the multitude of dangers posed by her husband.
Instead, she did virtually nothing. And by failing to afford her children protection, she assumed all the risks attendant thereto, including the sexual abuse to which Katherine was subjected. By tolerating the presence of her husband in the home, she allowed him to commit sexual offenses against her daughter within the meaning of the statute. Far too many parents, some very well-meaning, try, by themselves, to handle incest and sexual abuse by their spouses. By doing so, they often leave their children at great risk of continuing abuse and themselves liable to a finding of abuse.
Parents must be zealously and consistently dedicated to their children’s welfare. The obligation is fundamental and absolute. It may bring parents into conflict with each other and with their own respective needs and desires. When this occurs, the only appropriate parental response is clear. The welfare of the child must prevail. This proposition underlines the statutory intent of section 1012 of the Family Court Act. (Matter of Shane T., supra.)
The record reflects that the respondent mother is a strict disciplinarian, who frequently struck her children with a belt as punishment.[4] Katherine testified that she did not tell her mother about being abused out of fear that her *281 mother would become angry. If the respondent mother had fostered a close, nurturing relationship with Katherine, she may well have been told of the abuse. Instead, the mother relied upon fear as an instrument of discipline, thereby foreclosing the trust that should be the essence of the parent-child relationship.
Common sense indicates that parents must strive to maintain a meaningful dialogue with their children. Young people should be able to feel free, at all times, to discuss their problems, needs, and desires with their parents. And where parents alienate their children’s trust, they create the very dangers and liabilities that are present in the instant case.
The court is aware that parents are human beings, with their own weaknesses and frailties. The perfect parent, often idealized in television programs like the “Brady Bunch” and “Happy Days” is a fiction, reflecting a standard of behavior beyond the attainment of the real life parent in real life situations. For this reason, in a contest between the State and a natural parent, the “best interest” standard is not, in the first instance, applicable. The State may not properly interfere in the parent-child relationship simply because it feels that someone other than the natural parent could do a better job of raising the child. (Matter of Bennett v Jeffreys, 40 NY2d 543.) Article 10 of the Family Court Act, as well as case law, recognizes that parents have a fundamental right to raise their children and that State intervention in the parent-child relationship can only be justified where necessary to protect the child’s life, health and safety. (Wisconsin v Yoder, 406 US 205; Pierce v Society of Sisters, 268 US 510; Stanley v Illinois, 405 US 645.)
In this regard, a finding of neglect will be sustained where the parent has failed to exercise “a minimum degree of care” in providing adequately for the child. (Family Ct Act, § 1012, subd [f], par [i]; emphasis supplied.) Child abuse, on the other hand, is so serious per se, that parents must simply prevent it, even where that requires a maximum degree of care. In the scheme of American life, the parents are, and must be held to be, the first line of defense.
*282 In this case, the simple reality is that Katherine was sexually abused in her home over a period of three years. That this occurred without the knowledge of the respondent mother indicates a fundamental and very dangerous failing on her part.
Based on the foregoing, the court finds that Katherine’s siblings are neglected children even though there is no evidence that they have been injured in any way. The respondents have demonstrated such a “faulty understanding of the duties of parenthood” that there is a substantial risk that the children’s mental, emotional and physical condition is in imminent danger of becoming impaired. (Matter of Christina Maria C., 89 AD2d 855; Family Ct Act, § 1046, subd [a].)
Accordingly, the court finds that Katherine is abused and her siblings are neglected by both respondents. The Probation Department is directed to conduct an investigation and report to the court in aid of disposition: The Family Court clinic is ordered to do a complete psychological and psychiatric evaluation of both respondents and all the children. The temporary order of protection is continued and the children are continued on remand to the Commissioner of Social Services pending the dispositional order of this court. The matter is adjourned to February 15, 1984, for disposition.

. The respondent stepfather faces criminal charges in connection with his actions. At the fact-finding hearing, he chose not to testify.

. Although originally charged with abuse, the admission was made to neglect.

. Curiously, this information was initially elicited as a result of the cross-examination of Katherine by the respondent mother’s attorney. However, the petition did not allege unreasonable or excessive corporal punishment on the part of the other. This, coupled with the fact that the petitioner did not seek to conform pleadings to proof, precludes a finding against the natural mother on this ground.