OPINION OF THE COURT
Francis A. Affronti, J.
In this article 10 of the Family Court Act proceeding, it is alleged that the child, Roy T., Jr., born on October 18,1980, is an abused and neglected child, pursuant to section 1012 (subd [e], par [i]) and section 1012 (subd [f], par [i], cl [B]) of the Family Court Act.
The court takes judicial notice of an existing Family Court order directing that the child be temporarily placed in the physical care and custody of his grandmother, Doris T., under the supervision of the Monroe County Department of Social Services, pending further proceedings. In the interim, the respondent father has been exercising court-ordered visitation.
*173 On June 2, 1984, the respondent exercised his visitation and returned the child later that evening. No discussions were had between Mrs. T. and respondent regarding his visitation on that day nor did respondent volunteer any information as to Roy, Jr.’s physical condition. The following morning, while preparing to bathe her grandson, several marks were observed on his chest and stomach, and upon inquiry, Roy, Jr., said that his “daddy” burned him with a cigarette. At this juncture, the court notes that the law provides an exception to the hearsay rule in proceedings as the one at bar, by permitting the use of such out-of-court statements by the child, while further requiring “that no such statement, if uncorroborated, shall be sufficient to make a fact-finding of abuse or neglect”. (Family Ct Act, § 1046, par [a], cl [vi]; emphasis added.)
Significantly, on June 7,1984, Mrs. T. noticed the respondent talking to the child in front of her residence, and heard him say that the burns were an “accident”.
Roy T., Jr., age approximately four years, presented unsworn testimony after a preliminary examination by the court to establish, among other things, whether he understood the nature of an oath, the difference between right and wrong, the duty to tell the truth, and whether any punishment follows the telling of an untruth. Although unsworn testimony of a child is generally inadmissible in a civil action (Richardson, Evidence [10th ed], § 391), a Family Court Judge does possess discretion to dispense with an oath for á minor, and therefore, may receive unsworn testimony from such a witness. (Family Ct Act, § 152, subd [b].)
Roy, Jr., testified that, while on his father’s lap, and in the presence of several other individuals, he attempted to grab a lighted cigarette from his father’s mouth, because smoke was being blown in his face. At that moment, the respondent “did something on purpose”, and according to the child, he “burned me”.
On June 5, 1984, the child was seen by his pediatrician who testified that he observed five separate and distinct circular lesions above the naval on the lower part of his stomach. The wounds had blistered and scabbed and were healing properly, and therefore, no definitive medical treatment was provided. The physician opined that Roy, Jr., sustained at least superficial second degree burns, which were caused by the infliction of a hot object approximately the same size as each lesion.
A photograph of the injuries taken on June 4, 1984, was admitted in evidence. A fair and reasonable inference leads to a conclusion that the injuries existed at such time.
*174 The doctor further rendered his opinions that the injuries were not such that they created a substantial risk of death, serious or protracted disfigurement, or protracted impairment of physical or emotional health, or protracted loss or impairment of the function of any bodily organ. (Family Ct Act, § 1012, subd [e], par [i].) The lesions, marks, and/or scars, although potentially visible for up to one to two years, were unlikely to be permanently disfiguring, nor was protracted impairment anticipated.
The protective caseworker recounted limited conversations had with the child and his grandmother, but unfortunately was unable to detail any additional in-depth investigatory report. The so-called investigation, or more accurately, the obvious lack thereof, undertaken by the caseworker, his demeanor, and at times his abrupt and potentially argumentative responses to questions asked of him by counsel, and most poignant, his apparent rakish insensitivity to the gravity of the alleged acts which consummated in the instant proceeding, proved to be a great source of distress to the court.
The respondent and his witnesses all conceded that the event occurred while the child was lying on his father’s lap. There were, however, numerous discrepancies as to the words and acts leading to the injuries. Respondent related that he was playing with Roy, Jr., while smoking a cigarette and that the child grabbed the cigarette which fell on him, thereby yielding the burn. He characterized the occurrence as an accident and believed that his conduct at the relevant time was reasonable and appropriate. “[P]roof of injuries sustained by a child or of the condition of a child of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the care of such child shall be prima facie evidence of child abuse or neglect * * * of the parent or other person legally responsible”. (Family Ct Act, § 1046, subd [a], par [ii].)
A finding is herein made that respondent was the person responsible for his son’s care at the time the abusive acts arose. (Family Ct Act, § 1012, subd [g].)
The medical testimony, which is deemed the most crucial and critical element presented to the court, has been extensively weighed and pondered in resolving whether the injuries satisfy the applicable statutory mandate (Family Ct Act, § 1012, subd [e], par [i]). Likewise, the court is cognizant that the phraseology of the afore-mentioned statute was derived from subdivision 10 of section 10.00 of the Penal Law definition of “[sjerious physical *175 injury”, and that there is almost no discussion in existing case law interpreting the definition of “[s]erious physical injury” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act, § 1012, p 231).
“Protracted” means “to draw out” or “prolong”; “disfigure” means to “deform”; and to “impair” means “to diminish in strength, value, quantity, or quality” (American Heritage Dictionary [2nd College ed], 1982).
Upon initial and cursory reflection, the pediatrician’s dialogue, previously alluded to, leads the court to believe that the injuries do not legally satisfy the requisite statutory language so as to result in a finding of abuse. (Family Ct Act, § 1012, subd [e], par [i].) However, a determination as to the severity of the injuries inflicted is, in most instances, a question for the trier of the fact, and although the subjective reaction of the injured party is a proper factor to be considered, there is also an objective level below which the question is one of law. (See Matter of Philip A., 49 NY2d 198.) A reasonable and consistent interpretation of the medical testimony, together with all the credible and noncontradicted evidence, constrains and, in fact, dictates a finding that the lesions and/or scars represent “protracted disfigurement”, and to be further discussed, a “protracted impairment of physical and emotional health” (Family Ct Act, § 1012, subd [e], par [i]; emphasis added). The medical testimony regarding the appearance and number of “lesions”, in addition to the doctor’s unyielding and steadfast opinion that they will likely remain visible for up to two years, leaves no room for a contrary conclusion. Likewise, facts proven to the satisfaction of the court, and a logical consequence deduced therefrom, commands such a judgment.
The court further finds the injuries are “substantial” and not ordinarily sustained except by reason of the acts or omissions of the parent or other person responsible for the care of such child (Family Ct At, § 1046, subd [a], par [ii]).
Roy, Jr.’s testimony has been summarized herein, and despite his tender years, and youthful memory, it was easily perceived that his father’s conduct made an indelible and lasting impression upon him. This court cannot, and indeed, will not ignore the impact and potential effect which the injuries presently, or in the future, may have upon the child’s emotional and physical health.
Child protective intervention should be limited to cases supported by substantial evidence, as in the instant proceeding. “To fail to acknowledge this boy’s plight would be an affront to the *176 clear legislative intent of article 10 of the Family Court Act; to fail to label the father’s actions as child abuse would strip the phrase of all meaning; to fail to warn other parents against this insidious type of abuse would perpetuate the suffering of countless other defenseless children.” (See Matter of Shane T., 115 Misc 2d 161, 165.) As in Shane T. (supra, p 166), the respondent’s acts constitute a “grave and imminent threat to” the emotional and “future psychological development” of Roy, Jr. (Family Ct Act, § 1012, subd [e], par [i].)
The explanations proffered by respondent and his witnesses are not deemed. satisfactory or credible, and consequently, a preponderance of the evidence established that the acts occurred and that the respondent intentionally caused his son’s injuries. Upon proof of abuse and neglect, the burden shifts to the respondent to render a satisfactory explanation. (See Matter of Rose B., 79 AD2d 1044.)
On June 2,1984, Roy, Jr., relied upon and demanded parental love, understanding, and protection, all of which attributes were willfully and violently disregarded by respondent. Our courts have previously espoused that “[i]f parents fail in this vigilance to a degree which is rationally deemed to be dangerous, society, through the State, must intervene.” (Matter of Maureen G., 103 Misc 2d 109, 117.)
Therefore, upon the entire record of proceedings, it is the conclusion herein that Roy T., Jr., is an abused child and the petition is sustained.
The petitioner having failed to present any evidence to support the allegations of “Neglect” as denoted in the “Second Cause of Action”, the same is hereby dismissed.
A dispositional hearing shall occur on October 23, 1984, at 2:00 p.m. Petitioner shall submit a dispositional plan to the court and counsel within 72 hours prior to the above date.
Pending disposition any and all existing orders shall continue in full force and effect.