*496 OPINION OF THE COURT
Minna R. Buck, J.
By petition filed November 6, 1986, petitioner alleged that respondent father had hand-to-vagina contact with his five-year-old daughter and masturbated in her presence, thereby sexually abusing her and placing the child Robert in substantial risk of being abused. A hearing was commenced on March 13, 1987 and continued on March 17 and 18, all parties, with counsel, and the Law Guardian being present throughout.
The only issue facing the court is the weight to be given the evidence contained in this record. Is the child’s out-of-court statement to a police officer sufficiently corroborated by her unsworn testimony before the court? Has petitioner met its burden of sustaining the allegations by a preponderance of the credible evidence, in the face of respondent’s in-court denials of all the allegations of the petition?
Petitioner offered testimony from two police officers who had interviewed respondent and taken statements from him in late October and early November 1986, and from the children’s mother.
By stipulation of the parties, the child Christina (date of birth Oct. 21, 1981) was interviewed in Chambers, without the parties but with their counsel and the Law Guardian present, and a stenographic record was made. Respondent testified on his own behalf. Written statements made by respondent during interviews with the police on October 28 and 31 and November 3, 1986, as well as the affidavit of the police officer who interviewed Christina on October 27, 1986 were offered and received as part of the record.
No attempt was made to have the child sworn, in view of her age. Although her testimony was taken in Chambers, it did not constitute what is commonly referred to as "in camera testimony” (Matter of Lincoln v Lincoln, 24 NY2d 270), since respondent waived his appearance and all counsel were present and had an opportunity to question the child (contrast, e.g., Matter of Anne B., 131 Misc 2d 478). The child’s statements were substantially consistent with her out-of-court statements, as reported by the police investigator. However, in response to specific questions, the child offered considerably more detail concerning the sexual contacts alleged in the petition than had been reported by the police officer. Based on the court’s observation of the child’s language and demeanor, her statements appeared credible, to the extent that she *497 believed, what she was saying to be true, notwithstanding some discrepancies having to do with times of day and the actual dates or times of various incidents of hand-to-vagina contact. Although the child was unable to place these incidents in time, she stated that they occurred before she moved with her mother to the maternal grandmother’s home (Oct. 22, 1986).
Nevertheless, the child’s unsworn statements were the primary corroboration of the out-of-court statements, and the only evidence other than statements of the respondent offered to sustain the petitioner’s burden of proof in these proceedings (Family Ct Act § 1046 [a] [vi]).
If the respondent’s statements, both in and out of court, could be interpreted as admissions to the allegation of hand-to-vagina contact constituting sexual contact as defined in the Penal Law, as petitioner’s counsel contends, then the issue of corroboration through the child’s unsworn statements would not have to be addressed (Matter of Margaret W., 83 AD2d 557; Matter of Cindy B., 122 Misc 2d 395). There is a serious question, however, whether or not such statements of the respondent, standing alone, are sufficient to sustain the allegations of the petition. Respondent denied ever knowingly masturbating in the presence of the child. He also denied the child’s version of incidents of hand-to-vagina contact. He testified that on one occasion in September 1986, when Christina was sitting on his lap while they both watched television after dinner, the child placed his right hand on her vagina "between her legs” (indicating her vaginal area); that he immediately removed his hand and told her "no”, that within the next 10 minutes Christina again placed his right hand "down there” and he again responded the same way; and that he never mentioned this to anyone prior to his statement recounting this incident to the police investigator on November 3, 1986, and had in fact forgotten it because he thought it was "no big deal.”
The respondent also acknowledged writing a note of "apology” to the child shortly after he first recounted this episode to the investigators, which stated as follows: "I’m sorry for any bad feelings you have about me. I love you so much that maybe I should have brought it up to your mother. But it only happen [sic] once I stopped it before it you [sic] took it any farther. I love you. Dad”. The officer in whose presence respondent wrote this note testified that, in response to his question as to what "it” referred to, respondent was tearful *498 and said he was sorry he had not immediately discussed the episode with the child’s mother; at trial, respondent did not offer any different explanation but denied the officer’s further testimony that he (respondent) also said he was very upset about this alleged failure to talk to the mother because perhaps the child had a sexual problem and needed some help.
Respondent’s version of the hand-to-vagina contact was not very persuasive, and his credibility was further undermined by his testimony as tó the amount of time he spent in interviews with the police, which was at sharp variance with documentary evidence on the record. Nevertheless, in the absence of any allegations or proof as to "injuries * * * or of the condition of a child * * * as would ordinarily not * * * exist except by reason of the acts * * * of the parent”, petitioner still has the burden of establishing a prima facie case before the credibility of respondent’s denials is put into issue (Family Ct Act § 1046 [a] [ii]; Matter of Fawn S., 128 Misc 2d 186, revd on other grounds 123 AD2d 871).
Thus, we must consider whether or not the child’s unsworn statements constitute sufficient corroboration of the earlier hearsay testimony (Family Ct Act § 1046 [a] [vi]). Since the enactment of the Family Court Act (L 1962, ch 686), Family Courts of this State have been struggling with the issues of corroboration. Section 152 (b) modified the long-standing rule that unsworn testimony was inadmissible in civil proceedings (Richardson, Evidence § 391 [Prince 10th ed]) although the courts soon qualified this by ruling that such unsworn evidence must be corroborated at least in delinquency and PINS cases (Matter of Steven B., 30 AD2d 442). When section 1046 was added in the first amendments to the Child Protective Act, it further modified the rules of evidence to permit the child’s hearsay statements to be placed on the record, "provided * * * that no such statement, if uncorroborated, shall be sufficient to make a fact-finding of abuse or neglect” (L 1970, ch 962, § 9, as adding Family Ct Act § 1046 [a] [vi]; Matter of Roy T., 126 Misc 2d 172, 173). At the same time, the Legislature also provided that:
"In a fact-finding hearing (i) any determination * * * must be based on a preponderance of the evidence; and
"(ii) except as otherwise provided in this article, only competent, material and relevant evidence may be admitted” (Family Ct Act § 1046 [b]; emphasis added).
In affirming Matter of Bernelle P. (59 AD2d 764, affd 45 NY2d *499 937 [1978]), with respect to admissibility of a child’s in camera, presumably unsworn, statements, the Court of Appeals explicitly noted that these statements had not been relied on to sustain the allegations of abuse. Some cases declared that the unsworn in camera statements of a child might be used as corroboration of that child’s out-of-court statements, but in each such case, the record also contained other corroborative evidence (e.g., Matter of Tara H., 129 Misc 2d 508 [medical evidence or "validation” testimony]; see, Matter of Dana F., 113 AD2d 938 [where the court reversed the lower court’s dismissal based on an absence of corroboration, and remanded for further medical or validation testimony]). And even where the hearsay statements of one child were considered as corroboration of hearsay statements of another child, the cases have been at pains to point out that these were not instances of "pure” cross corroboration, since other corroborative evidence was found in the record (Matter of Tantalyn TT., 115 AD2d 799 [testimony as to the children’s behavior]; Matter of Cindy JJ., 105 AD2d 189 [respondent’s admissions]; for insightful summaries of the issues and case law, see, Matter of Michael G., 129 Misc 2d 186; Matter of Nicole V., 123 AD2d 97).
The only incontrovertible guide which has emerged is that "[W]hether or not sufficient corroboration exists is a determination to be made on a case-by-case basis” (Matter of Nicole V., supra, at 105), and recent amendments to section 1046 have not changed this dictum. Effective August 1, 1985, the statute was amended to add the following: "Any other evidence tending to support the reliability of the previous statements, including, but not limited to the types of evidence defined in this subdivision shall be sufficient corroboration” (L 1985, ch 724, amdg Family Ct Act § 1046 [a] [vi]).
Since the amendment, it has been held that the child’s in camera, presumably unsworn, statements must be treated as out-of-court statements and "may not, if uncorroborated, be sufficient for a finding of abuse or neglect” although it "may be used to effect the weight accorded a child’s prior out-of-court statements, or to corroborate other evidence” (Matter of Anne B., supra, at 482; emphasis added). Since the primary issue in that case was whether to admit the in camera statement which was taken in the absence of respondent over his objection, it is unclear how the court would have ruled had the unsworn statement been taken in respondent’s presence. More recently, the Second Department has held that "unsworn testimony of the child was sufficient to corroborate her *500 out-of-court description and demonstration of * * * sexual abuse” (Matter of Tina H., 123 AD2d 864).
In this court’s view, the recent amendment can only be interpreted as permitting the unsworn testimony of a child to confirm his or her own previous statements (Richardson, Evidence § 519 [Prince 10th ed], to the contrary notwithstanding), assuming such testimony "tend[s] to support the reliability of the previous statements”. As noted above, the court had an opportunity in this case to make observations of the child as she told her story, and found that the child appeared credible (contrast this with the concerns voiced in Matter of Nicole S., 123 Misc 2d 364, 368) and thus now accepts such statements as corroboration sufficient under the statute.
The court must also determine whether petitioner, having thus made out a prima facie case, has also satisfied its burden of sustaining the allegations by a preponderance of the credible evidence (Matter of Tammie Z., 66 NY2d 1; Matter of Linda C., 86 AD2d 356). In addition to respondent’s testimony, the record shows that the child’s mother had moved from the marital residence, with the child, to the home of the maternal grandmother on October 22, 1986. Mother’s testimony was that she had been unhappy with the relationship and on October 25, 1986, she informed the respondent she wanted a legal separation. On the following day, the child told grandmother of the alleged incidents; she then repeated them in front of mother, and these proceedings ensued. In her statements before the court, the child volunteered the information that grandmother had promised her a coveted toy after the court appearance, and that mother had discussed the contents of the child’s story with her during the drive to the courthouse. Respondent’s counsel argued that these facts point to both motive and opportunity on the part of the child’s mother to "program” the child and therefore cast doubt on the reliability of the child’s statements, even if the child herself thought she was being truthful.
It is a close question, and a troubling one. After a careful review of the record, however, the court is satisfied that the child’s account derived from fact and not from coaching by her mother. When asked why she had made the initial disclosure to her grandmother, and had not reported the incidents earlier to her mother, she responded freely that she didn’t want to tell mother because mother "yells a lot.” Mother testified as to a close relationship between the child and her grandmother; she also recounted the child’s response to moth *501 er’s question "Why didn’t you tell me before?” as essentially that the child thought it was a "deep dark secret” and was concerned that she might somehow be prevented from seeing her grandmother again if she revealed it. Given this unchallenged testimony, the fact that the child made her disclosures during the first few days after moving from her father’s house to her grandmother’s is not remarkable, despite the coincidence in time with mother’s own statements to respondent. Moreover, the plethora of specific detail offered by the child in her responses to questions by counsel, as to incidents of hand-to-vagina contact and her observations of masturbation by respondent was convincing proof that the child was not par-rotting a story on which she had been coached. (See, Berliner & Barbieri, Testimony of the Child Victim of Sexual Assault, 40 J Soc Issues 125 [1984]; Green, True and False Allegations of Sexual Abuse in Child Custody Disputes, J Am Acad of Child Psychiatry 25:449-56 [1986].) As noted above, respondent’s own testimony was unpersuasive. Moreover, the variance between his version and the child’s is too great to be explained away by an inference from this record that the child had been coached to the extent that would have been necessary to enable her to sustain such an elaborate fabrication.
On the record as a whole, the court now finds that the allegations of the petition have been sustained by a preponderance of the credible evidence. The Probation Department is hereby directed to conduct a social investigation, and submit it to the court no later than June 17, 1987 at 9:30 a.m., at which time the parties shall appear in Part V to consider disposition.