OPINION OF THE COURT
Sheldon Greenberg, J.
On March 13, 1986, Eurianya Pettiford and Xavier Pettiford, both two years old, were brought to the Brookdale Hospital emergency room. Fifty to 60% of each child’s body had bruises and lesions in varying stages of healing, and, in addition, Eurianya had venereal warts within her vagina.
The children’s mother, Toi-Ling Pettiford, and her paramour, Hillard DeBose, were arrested, and thereafter the instant indictment was filed (on Apr. 2, 1986), charging Mr. DeBose with two counts of assault in the second and third degrees; three counts of sexual abuse in the first degree; and one count of criminal possession of a weapon in the fourth degree, based on his mistreatment of both children. Ms. Petti *603 ford was charged in the same instrument only with two counts of endangering the welfare of a child, for having permitted Mr. DeBose to abuse the children between January 1, 1986 and March 13, 1986.
Although Ms. Pettiford was arraigned April 16, 1986 on said indictment, prior thereto, on March 18, 1986, a caseworker with the Bureau of Child Welfare had filed a petition with the Family Court seeking permanent removal of the children from Ms. Pettiford’s household.* January 30, 1987, after a fact-finding hearing in the Family Court during which she admitted to improper supervision of the three children, Judge Joseph Esquirol, Jr., adjudged them to be abused, made a finding of neglect on the part of Ms. Pettiford, and ordered that the removal of the children from her custody which had been effected at the time of arrest be continued.
Hillard DeBose, also named in the Family Court petition, in addressing the indictment, pleaded guilty in Supreme Court, Criminal Term, to sexual abuse in the first degree on October 2, 1986, and has been sentenced as a first felony offender to an indeterminate prison term having a maximum of 4 Vi years.
Ms. Pettiford now seeks dismissal of the remaining counts of the indictment against her, claiming that CPL 40.20 bars prosecution of the indictment from continuing, because further action thereon would place her in double jeopardy. The moving papers state:
"The sole issue here is the provisions [sic] of Section 40.20 that a person may not be twice prosecuted for the same offense except that the statutory provisions are designed to prevent from different kinds of harm or evil [sic].
"In the case at bar, the statutory design is punishment of a parent or guardian for neglect or abuse of a child and up to one year in jail. However, the punishment in the Family Court for the same offense is the loss of the child. The removal of the child from its mother is a graver and more serious offense. What greater tragic event can there be then [sic] the taking of children from their mother and terminating the parental rights of the mother. Can there be a worse punishment?”
*604 The defense position under the facts herein is not valid. While CPL 40.20 provides that a person may not be twice prosecuted for the same offense, to be "prosecuted for an offense” within the meaning of that section, an accusatory instrument must be filed in a court of this State or of any jurisdiction within the United States, and that action must be terminated by either a plea of guilty or trial (CPL 40.30). No accusatory instrument has been filed against Ms. Pettiford arising out of the facts herein, other than the instant indictment. While the indictment was filed in Supreme Court subsequent to the Bureau of Child Welfare filing the petition in the Family Court, the indictment is not a second prosecution.
The legislative purpose underlying article 10 of the Family Court Act (pursuant to which the petition was filed seeking a determination that Ms. Pettiford’s children were abused or neglected) is purely civil in nature (Matter of Katherine C., 122 Misc 2d 276, 277; Matter of Shane T., 115 Misc 2d 161, 164; Matter of Doe Children, 93 Misc 2d 479). The mandate of the Family Court is defined in section 1011 of the Family Court Act as: "to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being”. To this end matters brought thereunder are civil proceedings wherein a child may be adjudicated to be abused or neglected by a fair preponderance of the evidence (Family Ct Act § 1046 [b]), with the question of punishing offending parents being reserved to a criminal forum (Matter of Fred S., 66 Misc 2d 683).
It has long been held that a judgment in a criminal case does not bar recovery in a civil action based upon the same facts, and conversely, recovery in a civil action is no bar to criminal prosecution (People v Goldstein, 79 Misc 2d 996, 999, affd 89 Misc 2d 761; People v Topping Bros., 79 Misc 2d 260; People v Hacker, 76 Misc 2d 610; City of Buffalo v Till, 192 App Div 99, 108; People v Snyder, 90 App Div 422).
The Family Court action herein sought to ensure the safety and welfare of the defendant’s minor children with the resultant order seeking only to relieve the children’s difficulties, not to punish their tormentors. Penal Law § 260.10 (1) defining endangering the welfare of a child, on the other hand, is a statute carrying with it criminal penalties resulting from the breach of a duty which the People of the State of New York have recognized to exist on the part of adults in the community in their dealings with young persons. It seeks only to punish; and the fact that a parallel civil proceeding concerned *605 with protecting the youngsters is instituted by the Bureau of Child Welfare becomes irrelevant to a determination of the criminal charges later filed against the defendant parent (see, People v Goldstein, supra). "The two proceedings operate independently of each other, and neither Grand Juries, criminal courts, nor prosecutors are bound or legally influenced by the results of Family Court determinations.” (Matter of T. G., 128 Misc 2d 914, 918.)
Similarly, since there has been no prior prosecution of this matter in any criminal court, no issue of ultimate fact has previously been determined by a valid and final judgment and there is no collateral estoppel (see, People v Chang, 86 Misc 2d 272). Moreover, strong policy considerations militate against giving issues determined in prior litigation preclusive effect in a criminal case, even where the prerequisites for application of the collateral estoppel doctrine are met, i.e., identity of parties and issues and a full opportunity to litigate the matter. It is against public policy since the correct determination of guilt or innocence is paramount in criminal cases; therefore, this flexible doctrine should not be applied automatically (People v Fagan, 66 NY2d 815, 816; People v Berkowitz, 50 NY2d 333, 345).
The defendant having been the subject of only one accusatory instrument filed for the purpose of enforcing a criminal statute, the court denies herewith the defendant’s request to dismiss this indictment on the grounds of double jeopardy or collateral estoppel.

 She was accused in the Family Court of the State of New York on docket No. NA 2452 of abuse and neglect of her daughter, Ina Yves Jones; on docket No. NA 2453 of abuse and neglect of her son, Xavier Pettiford; and on docket No. NA 2454 of abuse and neglect of her daughter Eurianya Pettiford (all acts said to have been committed on Mar. 12,1986).